IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RIDGEVIEW IP LLC, | | |
| Plaintiff, | | C.A. No. 22-cv-557-VAC-MPT |
| v. | | |
| CENGAGE LEARNING, INC., | | JURY TRIAL DEMANDED |
| Defendant. | | |

**DEFENDANT CENGAGE LEARNING, INC.'S OPENING BRIEF IN SUPPORT OF ITS
RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

Jeremy D. Anderson (No. 4515)
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 658-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
Rodeen Talebi
Philip Brown
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
bonilla@fr.com
talebi@fr.com
pgbrown@fr.com

*Attorneys for Defendant
Cengage Learning, Inc.*

Dated: July 29, 2022

**TABLE OF CONTENTS**

I.     NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

II.    SUMMARY OF THE ARGUMENT .............................................................................. 1

III.   STATEMENT OF THE ISSUE ....................................................................................... 2

IV.    STATEMENT OF THE FACTS ...................................................................................... 2

V.     ARGUMENT .................................................................................................................. 4

       A.    This Case Should Be Disposed of at the Pleading Stage under Rule 12(c). ........... 4

       B.    The Law of 35 U.S.C. § 101. .................................................................................. 5

       C.    The Asserted Patent is Invalid under 35 U.S.C. § 101. .......................................... 6

             1.    Claim 1 of the '270 Patent is representative. .................................................... 6

             2.    *Alice* Step 1: Claim 1 of the '270 Patent is directed to the abstract idea of
                   iteratively selecting search options to narrow search results. ........................... 8

             3.    *Alice* Step 2: The claims of the '270 Patent do not contain an inventive
                   concept to transform the abstract idea into patent-eligible subject matter...... 13

             4.    There are no claim construction or factual disputes preventing a ruling on this
                   issue at the Rule 12 stage. .............................................................................. 18

VI.    CONCLUSION .............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ........................................................................6, 8, 14

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
   966 F.3d 1347 (Fed. Cir. 2020) (Chen, J., concurring) .........................12

*Ancora Techs. v. HTC Am., Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018) ...............................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) .................................................................5

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) .........................................................18, 19

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ...........................................................................5, 6, 7

*buySAFE v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ...............................................................17

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
   21 F. Supp. 3d 758 (E.D. Tex. 2014) .........................................................7

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ...........................................................8, 17

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018) ...............................................................12

*Cuvillier v. Taylor*,
   503 F.3d 397 (5th Cir. 2007) .....................................................................5

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed. Cir. 2018) .................................................................12

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980) ...................................................................................6

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ...........................................................13, 17

*Epic IP LLC v. Backblaze, Inc.*,
    351 F. Supp. 3d 733 (D. Del. 2018) (Bryson, J.) ................................................................2, 9

*Finjan, Inc. v. Blue Coat System, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)................................................................................9, 10

*Gibbs v. Coupe*,
    No. CV-14-790-SLR, 2015 WL 6870033 (D. Del. Nov. 6, 2015) ...........................................5

*Health Discovery Corp. v. Intel Corp.*,
    No. 6:20-CV-666-ADA, 2021 WL 6116891 (W.D. Tex. Dec. 27, 2021) ...............................11

*Hyper Search, LLC v. Facebook, Inc.*,
    No. CV 17-1387-CFC-SRF, 2018 WL 6617143 (D. Del. Dec. 17, 2018) ...........11, 14, 15, 16

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)..............................................................................................17

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1315 (Fed. Cir. 2017).......................................................................................10, 17

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)..............................................................................................17

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
    No. 2:12-cv-800-WCD, 2015 WL 3452469 (E.D. Tex. May 29, 2015)..................................17

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)..............................................................................................12

*Morales v. Square, Inc.*,
    75 F. Supp. 3d 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015), *cert. denied*,
    136 S. Ct. 1461 (2016) ............................................................................................................8

*Netflix, Inc. v. Rovi Corp.*,
    114 F. Supp. 3d 927 (N.D. Cal. 2015), *aff'd*, 670 F. App'x 704 (Fed. Cir. 2016) .................11

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
    No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019).................................8

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017)..............................................................................................12

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)................................................................................................9

*Semantic Search Tech. LLC v. Aldo U.S., Inc.*,
    425 F. Supp. 3d 758 (E.D. Tex. Aug. 21, 2019) ....................................................1, 10, 14, 16

*In re TLI Commc'ns LLC Patent Litigation,*
    823 F.3d 607 (Fed. Cir. 2016) ............................................................................16

*Turbe v. Government of the Virgin Islands,*
    938 F.2d 427 (3d Cir. 1991) ................................................................................4

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
    874 F.3d 1329 (Fed. Cir. 2017) ........................................................................12

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ..................................5, 14

*Victaulic Co. v. Tieman,*
    499 F.3d 227 (3rd Cir. 2007) ..............................................................................5

*Yu v. Apple Inc.,*
    1 F.4th 1040 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113, 212 L. Ed. 2d 10 (2022) ..........17

**Statutes**

35 U.S.C. § 101 .................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(c) ....................................................................................2, 4, 19

Fed. R. Civ. P. 12(b)(6) ..............................................................................4, 5, 18

# I. NATURE AND STAGE OF PROCEEDINGS

On April 28, 2022, Ridgeview IP LLC filed this lawsuit accusing Cengage Learning, Inc. of infringing one or more claims of U.S. Patent No. 6,983,270 via its Gale Expanded Academic searching system. (D.I. 1 at ¶¶ 11–15, Ex. 2.) On May 27, Cengage filed its answer, affirmative defenses, and counterclaims. (D.I. 9.)

# II. SUMMARY OF THE ARGUMENT

The claims of the '270 Patent are directed to the abstract idea of iteratively selecting search options to narrow search results, and the claims do not contain any inventive concept sufficient to confer patent eligibility on the claimed abstract idea. *See Semantic Search Tech. LLC v. Aldo U.S., Inc.*, 425 F. Supp. 3d 758, 775-776, 778 (E.D. Tex. Aug. 21, 2019) (finding that claims directed to "searching for and retrieving information by 'mapping lexical keywords into entity description semantics [using] a computer'" were directed to an abstract idea, and there was no inventive concept in the iterative nature of the claims).

Searching databases using an index of categories and subcategories is a common principle that is implemented routinely on computer systems. This concept predates computers, as it was commonly used to organize and identify records long before digital content. Implementing these basic ideas on computers has led to efficient means for storing and filtering large amounts of data, but the core concepts remain the same. The '270 Patent's purported solution is to iteratively display search results and categories (entries and operators) for selection to further narrow the results. But the patent explains that existing art already included methods for searching a database using entries or categories, searching using operator terms, searching with updating or constant modification, and displaying results. The claims of the '270 Patent do not provide any specific way of accomplishing this idea beyond the repeated use of steps already common and known in the field.

As such, the '270 Patent's applicant did not claim an unconventional system to solve the problem they identified. Nor did they claim a particular mechanism for improving computing systems. Claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018) (Bryson, J.). The '270 Patent simply claims an abstract concept, not a specific implementation of that concept. Its claims are therefore invalid for failure to claim patent-eligible subject matter.

Resolving this issue does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, Cengage thus requests that the Court enter judgment on the pleadings in favor of Cengage under Rule 12(c) of the Federal Rules of Civil Procedure and dismiss the Complaint with prejudice.

## III.    STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The claims of the '270 Patent are directed to the abstract idea of iteratively selecting search options to narrow the results and do not include an inventive concept beyond that idea. Should the Court therefore dismiss Ridgeview's claims pursuant to Rule 12(c)?

## IV.    STATEMENT OF THE FACTS

U.S. Patent No. 6,983,270 (the "'270 Patent") is titled "Method and Apparatus for Displaying Database Search Results." It "relates to displaying the progress and results of database searches." *See* '270 Patent, 1:6-7. Searching systems for database searching were in use long before the alleged invention claimed in the patent. *See id.*, 1:11-2:20. The specification admits that methods "for searching databases by organizing the data contained therein into categories and sub-categories, or lists" were known in the art. *Id.,* 1:12-13. Additionally, there were known "searching

methods . . . includ[ing] complex steps for handling null values." *See id.,* 1:56-57 (citing U.S. Patent Nos. 6,006,225 and 5,905,982). The patent also concedes that there existed multiple known patents that dealt with "categorization or clustering" and "method[s] to extract sets of records from a database . . . employ[ing] . . . categories." *Id.*, 1:14-41 (citing U.S. Patent Nos. 5,924,090 and 5,537,586).

The goal of the alleged invention was to provide "a method of displaying database search results so as to avoid obtaining null responses or—more generally—to avoid an unwanted result and to obtain a wanted result." *Id.*, 2:24-27. The '270 Patent's purported solution for achieving this goal is "continuously editing the available database responses, as well as possible search terms, and displaying updated database entries and operator choices." *Id.*, 2:31-33. Representative Claim 1 relies on iterative filtering applied to search results based on user selected entries and operators (*e.g.*, logical operator such as "and," "or," or "not") that are updated to avoid irrelevant options. This filtering occurs using entries or categories from the database in combination with operators. *Id.*, 2:24-36, 2:46-53. According to Claim 1, an option is selected (either an entry or an operator) by the user, and then the results are displayed and options updated, a second option is selected, updated options are displayed, a third option is selected, results and options are displayed, and the steps are repeated to achieve the desired result. *Id.*, Cl. 1. But the purported solution consists of nothing more than the use of conventional technologies. The applicant made this clear through his own language in the specification. For example:

- Searching a database: "U.S. Pat. No. 5,924,090 discloses a method and apparatus for searching databases by organizing the data contained therein into categories and sub-categories, or lists, such as entry lists or value lists." *Id.*, 1:11-14, 1:37-42.

- Using entries for searching: "organizing the data contained therein into categories and sub-

categories, or lists, such as entry lists or value lists;" "method employs assignments of priority values to categories, and database entries are in turn, prioritized with respect to each category." *Id.*, 1:12-14, 1:39-41.

- Using operators for searching: "[a]fter a search query or click-choice is made, a conventional Boolean operator term is chosen." *Id.*, 3:3-4.

- Displaying: "graphically displaying a subset of said categories;" "[s]ubsets of entries are then displayed." *Id.*, 1:23-24, 1:45.

- Updating options: "the relevance of the set of entries to a category, and the priority of the category itself undergo constant modification." *Id.*, 1:43-44.

- Avoiding null results: "guaranteeing that the modified queries will not produce a null result." *Id.*, 1:56–2:2.

Consequently, the alleged invention claimed in the '270 Patent amounts to nothing more than using conventional methods in an iterative manner to narrow search results.

## V.     ARGUMENT

### A.     This Case Should Be Disposed of at the Pleading Stage under Rule 12(c).

A Rule 12(c) motion may be made "after the pleadings are closed but within such time as not to delay the trial." FED. R. CIV. 12(c). The difference between Rules 12(b)(6) and 12(c) is purely procedural as 12(c) requests for dismissal are governed by the same standards as 12(b)(6) motions. *See Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3rd Cir. 2007)

(citation omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Gibbs v. Coupe*, No. CV-14-790-SLR, 2015 WL 6870033, at *1 (D. Del. Nov. 6, 2015) (citation omitted). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### B.     The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract

ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.*, 653.

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

### C. The Asserted Patent is Invalid under 35 U.S.C. § 101.

Ridgeview's claims regarding the '270 Patent should be dismissed. The claims of the asserted patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of iteratively selecting search options to narrow search results. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added).

### 1. Claim 1 of the '270 Patent is representative.

Claim 1 of the '270 Patent is representative of the other claims because the claims contain the same essential elements. Specifically, independent claims 1, 17, and 21-22 include: (a) providing a set of options to select from to initiate a search, (b) selecting an initial choice, (c) displaying a set of results, (d) updating the set of options, (e) selecting a second choice, (f) updating the set of options, (g) selecting a third choice, (h) updating the set of options, and (i) and repeating steps d-h if the desired result is not reached. Claim 17 uses "operands" (logical values) instead of

"entries" in combination with "operators" to narrow the results. *Id.*, Cl. 17. Claim 21 displays entries and operators but does not specify that the result must be valid. *Id.*, Cl. 21. Claim 22 relies on "supplying" the set of entries rather than "displaying" these entries. These variations do not change the § 101 inquiry as all of the independent claims contain the same essential elements.

The dependent claims add additional limitations regarding the abstract idea, but these are token pre- or post-solution activity that cannot confer an inventive concept. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *see also Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful) (quotations omitted). Claims 2-16 include insignificant variation on aspects such as what can be included in the entries and what is the desired result:

| Additional Limitations | Claims |
|---|---|
| how the entries and results are displayed/organized | 2-3, 6, 7, 16 |
| what data makes up the entries | 12, 13, 14 |
| whether the desired result is a nullity/non-nullity | 4-5 |
| how the selections are made | 8, 9 |
| what makes up the operators | 8, 10, 11, 15 |

And Claims 18-20 simply require that the method is directed to a "computer program product," "computer program element stored in a computer readable medium," or "a computer readable medium." *Id.*, Cl. 18-20.

Similar to the claim limitations in the representative Claim 1, the additional claim limitations consist of generic components used for their conventional purpose, and thus, they do not alter the §101 analysis. Claim 1 is thus representative for the § 101 analysis. *See PPS Data,*

*LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis); *see also Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

> **2.** ***Alice* Step 1: Claim 1 of the '270 Patent is directed to the abstract idea of iteratively selecting search options to narrow search results.**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of iteratively selecting search options to narrow search results. *See id.* at 2356-59.

In assessing whether this claim is directed to an abstract idea, the Court must look past the claim language for the purpose of the claim to determine what the invention is trying to achieve. *Morales v. Square, Inc.*, 75 F. Supp. 3d 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). All Claim 1 explains is using existing methods to narrow results of a search in an iterative manner:

| Claim Language | Claimed Idea |
|---|---|
| 1. A method for displaying a progress and results of a database search until a desired result is displayed, said method comprising the steps of: | |
| a. displaying a set of entries from a database and a set of operators, wherein ones of said displayed set of entries and ones of said displayed set of operators are selected to form a database search query for producing valid results; | Displaying options |
| b. selecting an initial entry of said displayed set of entries; | Selecting an option |
| c. displaying a set of valid results from a query based on said selected entry; | Displaying results |
| d. updating said set of displayed operators based on said selected entry, wherein said updated set of displayed | Displaying options |

| | |
|---|---|
| operators includes only operators from the set of operators, wherein the operators combined in a query with the selected entry and at least one of the set of entries from the database produce at least one valid result; | |
| e. selecting an operator from the updated displayed set of operators; | Selecting an option |
| f. updating said displayed set of entries in response to the selected operator, wherein said updated displayed set of entries includes only entries from the database, wherein the entries combined in a query with the selected entry and the selected operator produce at least one valid result; | Displaying results |
| g. selecting one of said updated displayed set of entries; | Selecting an option |
| h. updating said displayed set of valid results according to a query based on the selected entries and the selected operator; and | Displaying results |
| i. while said updated displayed set of valid results is not the desired result, repeating steps d. through h., based on all previously selected entries and operators, to select an additional operator and an additional entry for the database search query, and to update said displayed set of valid results. | Repeating steps d-h |

'270 Patent, Cl. 1. As demonstrated above, the claim quickly reduces down to the bare idea of iteratively selecting search options to narrow search results. This is an abstract idea ineligible for patenting. *See Epic IP*, 351 F. Supp. 3d at 740 (finding claims that "recite the concept, but not the way to implement it" are patent ineligible).

The abstract idea inquiry begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely

as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)).

Here, Claim 1 is not directed to any specific means or method for improving technology—it is directed to the abstract idea of iteratively selecting search options to narrow search results. The '270 Patent's objective was to provide "a method of displaying database search results so as to avoid obtaining null responses or—more generally—to avoid an unwanted result and to obtain a wanted result, when performing logical operations." '270 Patent, 2:24-28. The solution provided by the patent is to iteratively display options that the user can select to narrow the results. *Id.*, Cl. 1; *see also id.*, 2:30-33 ("The present invention achieves this by continuously editing the available database responses, as well as possible search terms, and displaying updated database entries and operator choices.").

Courts have found similar patent claims ineligible for patent protection. For example, in *Semantic Search*, the court reviewed claims directed to "iteratively searching for and presenting information based on user feedback." 425 F. Supp. 3d at 775. In that case, the court explained that collecting search terms, storing potentially related information, scoring the information, and "having the user 'iteratively' select the user's preferred results" was "not directed to specific technological improvements in the capabilities of computer technology but simply provide[d] for the use of a computer to perform 'economic or other tasks for which a computer is used in its ordinary capacity.'" *Id.* at 776 (internal citation omitted). Similar to the claims at issue in *Semantic Search*, Claim 1 of the '270 Patent is directed to iteratively searching a database for desired results using user input. As the *Semantic Search* court explained, "[t]he process of iteratively searching for and presenting information based on user feedback, without more, is directed to an abstract idea" and cannot be patented. *Id.*; *see also*, *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) ("[W]e agree with the district court that the invention is

drawn to the abstract idea of 'creating an index and using that index to search for and retrieve data.'"); *Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 941 (N.D. Cal. 2015), *aff'd*, 670 F. App'x 704 (Fed. Cir. 2016) ("Overall, the court finds that the [patent] is indeed directed to the abstract idea of filtering search results using selectable categories.").

Further, when confronted with claims capturing other iterative processes, courts have found that performing known abstract steps in an iterative manner is not enough to create patent eligible subject matter. *See, e.g.*, *Hyper Search, LLC v. Facebook, Inc.*, No. CV 17-1387-CFC-SRF, 2018 WL 6617143, at *9 (D. Del. Dec. 17, 2018) ("[Plaintiff] contends that this is a specific process that is new, performed by a computer, **iterative**, and adaptive . . . . The asserted claims of the [] patent implement a generic computer system to obtain functional results of providing information based on feedback from recipients.") (emphasis added); *Health Discovery Corp. v. Intel Corp.*, No. 6:20-CV-666-ADA, 2021 WL 6116891, at *11 (W.D. Tex. Dec. 27, 2021) (explaining that layering an abstract concept onto a mathematical concept resulted in an abstract mathematical concept that was not overcome by the "**iterative nature**" of the technique) (emphasis added). Similar to the claims at issue in these cases, Claim 1 of the '270 Patent is directed to an abstract idea because it simply takes the concept of using entries and operators to narrow search results and attempts to implement this concept through existing computer technology in an iterative manner.

Claim 1's limitations also recite the method in purely functional terms, and this further supports its abstractness. In determining whether a claim is directed to an abstract idea, courts have focused on whether the claim is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved. As Federal Circuit Judge Chen has commented, "while not all functional claiming is the same, simply reciting a functional result at the point of novelty poses serious risks under [S]ection 101." *Am. Axle & Mfg., Inc. v. Neapco*

*Holdings LLC*, 966 F.3d 1347, 1356 (Fed. Cir. 2020) (Chen, J., concurring) (citations omitted). For example, in *Investpic*, the court asked whether the claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it." *Investpic*, 898 at 1167. To answer that question, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *McRO, Inc. v. Bandai Namco Games Am., Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoked generic processes and machinery."). Therefore, the question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Claim 1 is directed to an abstract end-result. It lacks any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,* 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a **specific** improvement in the capabilities of computing devices") (emphasis added); *see also RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a **specific** means or method for improving technology") (emphasis added). Claim 1 does not require a new or unconventional machine or process for narrowing database results—it only requires repeatedly

displaying options to select to narrow down the results. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016). But Claim 1 does not describe how the desired result—iteratively selecting search options to narrow the results—is achieved. The mechanism to implement the idea is impermissibly unbounded in scope.

Claim 1 thus differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "[i]mproving security—here, against a computer's unauthorized use of a program—can be a **non-abstract** computer-functionality improvement . . . done by a **specific technique** that departs from earlier approaches to solve a **specific computer problem**." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

The claimed advance of the claims of the '270 Patent is iteratively selecting search options to narrow search results, and this is an abstract concept ineligible for patent protection.

> **3.** *Alice* **Step 2: The claims of the '270 Patent do not contain an inventive concept to transform the abstract idea into patent-eligible subject matter.**

The claims of the '270 Patent are directed to an abstract idea, and, as such, the Court must next determine whether the patent contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal

quotations omitted). To pass this test, the claims of the '270 Patent "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, the asserted claims are broadly generic and do not contain meaningful limitations that would restrict them to a non-routine, specific application of the abstract idea.

Each of the steps and components recited in the claims is described only at a high level of generality such as displaying entries and operators, selecting from these entries and operators, and displaying the results of the narrowed set along with updated entries and operators to further narrow the search results. These steps are done iteratively to extract the desired result from the database. For example, Claim 1 explains "selecting an initial entry," "selecting an operator," "selecting one of said updated displayed set of entries," and "repeating steps d. through h." *Id.* This is nothing more that selecting search terms and operators to narrow the search results, and repeating the process. Presented with similar circumstances, courts have found that the iterative response to user inputs is not an inventive concept. *See, e.g.*, *Semantic Search*, 425 F. Supp. 3d at 778 ("That is, the alleged 'inventive concept' is, itself, the abstract idea of iteratively searching for and presenting information based on user feedback . . . . Even accepting Plaintiff's allegations regarding the improvement to search techniques as true, Plaintiff's allegations lie in the abstract idea itself."); *see also Hyper Search*, 2018 WL 6617143 at *8, 10 (finding claims directed to the abstract idea of providing information based on feedback from recipients performed by a computer, iterative, and adaptive did not provide an "inventive concept" because "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.")

To accomplish the steps in Claim 1, the '270 Patent recites use of conventional limitations for searching a database such as using entries or categories ('270 Patent, 1:12-13, 45), using "conventional Boolean operator terms" (*id.*, 3:4), displaying results (*id.*, 1:23-24), updating or modifying the relevance of entries (*id.*, 1:43-44), and avoiding null results (*id.*, 1:56–2:2). All of the key steps in Claim 1, were well known and conventional at the time of the '270 Patent. For example, as the specification of the '270 Patent admits, techniques for searching databases were known. *Id.*, 1:11-24, 1:37-48 (citing U.S. Patent Nos. 5,924,090 and 5,537,586). Additionally, methods to search databases using "categories" and "entries" were both also already known in the art and known to the applicant. *Id.*, 1:12-17 ("searching databases by organizing the data contained therein into categories and sub-categories, or lists, such as entry lists or value lists"); *id.*, 1:39-45 ("This method employs assignments of priority values to categories, and database entries are in turn, prioritized with respect to each category…. the relevance of the set of entries to a category, and the priority of the category itself undergo constant modification.").

In fact, the prior art already included search operations such as using "a complex categorization or clustering methodology to first generate a search result list, and then to cluster the results into relevant categories" and a "method employs assignments of priority values to categories, and database entries are in turn, prioritized with respect to each category." *Id.*, 1:14-17, 39-42. Further, the patent specification admits to using a "conventional Boolean operator term." *Id.*, 3:3-4. The patent also explained that displaying the results of the processing was known. *Id.*, 1:23-24 ("displaying a subset of said categories"); *id.*, 1:43-44 ("the relevance of the set of entries to a category, and the priority of the category itself undergo constant modification. Subsets of entries are then displayed."). The patent specification also explained that the prior art already contained the process of "constant modification" or updating the "relevance of the set of entries to

a category, and the priority of the category itself" as well as methods "for handling null results." *Id.*, 1:43-44; 1:56-2:2.

Thus, Claim 1 of the '270 Patent is implemented on generic and well-known computer technology, performing conventional database searching techniques, and therefore does not contain an inventive concept sufficient to confer eligibility. The performance of these conventional techniques in an iterative fashion is not an inventive concept either. *See Semantic Search*, 425 F. Supp. 3d at 778. The '270 Patent does not explain specific techniques or technology to accomplish the steps of the claims. Rather each step in the claim is merely described using generic functional language. There is simply nothing "inventive" about displaying options for a user to select from and then updating a search based on user selection, and repeating these steps.

The abstract functional descriptions in the claims are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (finding the claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures I LLC v. Symantec Corp.*, nothing in the claims of the '270 Patent "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 838 F.3d 1307, 1316 (Fed. Cir. 2016) (citing omitted); *see also Semantic Search*, 425 F. Supp. 3d at 778.

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in the claims of the '270 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *Intellectual Ventures I*, 850 F.3d at 1328 ("[W]e agree with the district court that [the claims] lack an 'inventive concept' that transforms the abstract idea of creating an index

and using that index to search for and retrieve data into a patent-eligible application of that abstract idea."); *buySAFE v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context.").

Likewise, the term "displaying" in Claim 1 does not render it patent eligible as describing a user interface because a claimed computer does not become a special-purpose computer simply because the claims recited having an interface. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("interactive interface" is patent ineligible); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) ("intelligent user interface to an online application" is patent-ineligible); *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCD, 2015 WL 3452469, at *14 (E.D. Tex. May 29, 2015) ("a graphical user interface" is patent ineligible).

Claim 1 of the '270 Patent requires nothing more than use of generic computer technology to display and select entries and operators to iteratively narrow a database search. "Nothing in the claim[], understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. There is thus no limitation in Claim 1 that could be considered an inventive concept. *See, e.g.*, *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113, 212 L. Ed. 2d 10 (2022) ("Here, the claimed hardware configuration itself is not an advance and does not itself produce the asserted advance of enhancement of one image by another, which, as explained, is an abstract idea. The

claimed configuration does not add sufficient substance to the underlying abstract idea of enhancement—the generic hardware limitations of claim 1 merely serve as a conduit for the abstract idea.") (quotations and citations omitted).

The other claims of the '270 Patent include similar limitations regarding the abstract idea, but they do not include the specificity necessary to claim patent-eligible subject matter. They also do not include anything other than generic components and processes such that they fail to contain an inventive concept. Accordingly, the other claims suffer from the same flaws as Claim 1. These claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not inject any unconventional computer components or techniques. The claims simply apply the same abstract concept of iteratively selecting search options to narrow the results, and the Federal Circuit has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech*, 899 F.3d at 1290 ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

### 4. There are no claim construction or factual disputes preventing a ruling on this issue at the Rule 12 stage.

The issue of the patent eligibility is ready for the Court's consideration because there are no factual or claim construction issues. This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The court added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and

determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370. Here, in contrast, there is no factual dispute whether the claims of the '270 Patent include an inventive concept, and Ridgeview has not alleged that any such inventive concept exists.

## VI. CONCLUSION

For the foregoing reasons, Cengage respectfully requests that the Court enter judgment on the pleadings in favor of Cengage and against Ridgeview pursuant to Rule 12(c), and dismiss the case with prejudice.

Dated: July 29, 2022

**FISH & RICHARDSON P.C.**

By: */s/ Jeremy D. Anderson*

Jeremy D. Anderson (No. 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 658-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
Rodeen Talebi
Philip Brown
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
bonilla@fr.com
talebi@fr.com
pgbrown@fr.com

*Attorneys for Defendant*
*Cengage Learning, Inc.*